**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

**INDUSTRIAL TURNAROUND CORP.,**

Plaintiff,

v.

**CHEMTRADE HOLDCO U.S., INC., et al.,**

Defendants.

CASE NO. 3:25 CV 2123

JUDGE JAMES R. KNEPP II

**MEMORANDUM OPINION AND ORDER**

## INTRODUCTION

Pending before the Court is Defendants Chemtrade Holdco U.S., Inc. and Chemtrade Logistics (U.S.), Inc.'s Motion to Compel Arbitration and to Stay Case. (Doc. 6). The matter is fully briefed and decisional. *See* Docs. 7, 9. Jurisdiction is proper under 28 U.S.C. § 1332. For the reasons discussed below, the Court grants Defendants' Motion and stays this case.

## BACKGROUND

Plaintiff Industrial TurnAround Corporation originally brought this case in the Common Pleas Court of Allen County alleging claims related to a construction project in Lima, Ohio. *See* Doc. 1-2. Shortly after removing to this Court, Defendants filed the pending Motion, claiming an arbitration clause within the contract at issue requires this Court to stay or dismiss all claims. *See* Doc. 6.

<u>The Contract</u>

Chemtrade Holdco ("Owner" as referenced in the contract) and ITAC ("Design-Builder") entered into an AIA Document A141 – 2014 Standard Form of Agreement Between Owner and Design-Builder on March 30, 2023. *See* Doc. 6-1. The Contract's scope consisted of "the design,

engineering, procurement of capital equipment, and construction of [Chemtrade Holdco]'s Ultra Pure Sulfuric Acid Project" in Lima, Ohio. (Doc. 6-1, at 2). Plaintiff was "responsible to complete the installation, design and installation for a process developed and defined by" Chemtrade Holdco. *Id.* Under the Contract, "Owner Affiliates" could issue purchase orders; Defendant Chemtrade Logistics U.S., Inc. ("Chemtrade Logistics") did so here. *See id.* at 12, § 2.1.3.3; *see also* Doc. 6-6, at 3 ("Pursuant to § 2.1.3.3 of the [Contract], a relevant purchase order for the Project, to which all future change orders applied, was issued by Chemtrade Logistics to [Plaintiff]."); Doc. 6-6, at 5-7 (purchase order); *see also* Doc. 9-2, at 3 ("Chemtrade Defendants intentionally and specifically included § 2.1.3.3 of the Design-Build Agreement so that Chemtrade Logistics (the U.S. operating entity for the Project) can be invoiced and pay for [Plaintiff's] services.").[1] The contract further provided that "If an Owner Affiliate issues a purchase order to Design-Builder, the terms and conditions set forth in this Agreement shall apply to and be binding upon such Owner Affiliate and the Design-Builder for each such purchase order." *Id.*

On February 7, 2024, and again on August 13, 2024, Chemtrade Holdco and Plaintiff entered into Design-Build Amendments. The February 7 Amendment added, and the August 13 Amendment reiterated, the following provision regarding the Relationship of the Parties:

> The Design-Builder accepts the relationship of trust and confidence established by this Agreement and covenants with the Owner to exercise the Design-Builder's skill and judgment in furthering the interests of the Owner related to the Project; to furnish efficient construction administration, management series and supervision; to furnish at all times an adequate supply of workers and materials and to perform the Work in an expeditious and economical manner consistent with the Owner's interests related to the Project.

---

1. An "Owner Affiliate" was defined as "a company or other entity controlling, controlled by, or under common control with Owner" with "control" meaning "the ability to determine, directly or indirectly, the management policies of a company or other entity through ownership of a majority of shares, by control of the board of management or directors, by agreement or otherwise." (Doc. 6-1, at 12, § 2.1.3.3). Chemtrade Logistics is a wholly-owned direct subsidiary of Chemtrade Holdco. (Burford Decl., Doc. 6-6, at 2-3).

(Doc. 6-2, at 10, § A.6.1; Doc. 6-3, at 11-12, § A.6.1).

Claims Under the Contract

The Contract provides a dispute resolution process for "claims."

A "claim" is defined as "a demand or assertion by one of the parties seeking, as a matter of right, payment of money, or other relief with respect to the terms of the Contract" and "other disputes and matters in question between the Owner and Design-Builder arising out of or relating to the Contract." (Doc. 6-1, at 42, § 14.1.1).

Any claim brought prior to final payment[2] "must be initiated by written notice to the other party within 30 days after occurrence of the event giving rise to such Claim or within 30 days after the claimant first recognizes the condition giving rise to the Claim, whichever is later." *Id.* at § 14.1.3.1. Then, pursuant to the Contract an "initial decision shall be required as a condition precedent to mediation of all Claims between the Owner and Designer-Builder initiated prior to the date final payment is due . . . unless 30 days have passed after the Claim has been initiated with no decision having been rendered." *Id.* § 14.2.1. "Unless mutually agreed in writing, the Owner shall render the initial decision on Claims." *Id.* The Contract then sets forth specific procedures:

> **§ 14.2.2 Procedure**
>
> **§ 14.2.2.1 Claims Initiated by the Owner.** If the Owner initiates a Claim, the Design-Builder shall provide a written response to Owner within twenty (20) Business Days after receipt of the notice required under Section 14.1.3.1. Thereafter, the Owner shall render an initial decision within ten (10) Business Days of receiving the Design-Builder's response: (1) withdrawing the Claim in whole or in part, (2) approving the Claim in whole or in part, or (3) suggesting a reasonable compromise.
>
> **§ 14.2.2.2 Claims Initiated by the Design-Builder**. If the Design-Builder initiates a Claim, the Owner will take one or more of the following actions within twenty (20) days after receipt of the notice required under Section 14.1.3.1: (1) request

2. It is undisputed that no final payment has been made.

> reasonable additional supporting data, (2) render an initial decision rejecting the Claim in whole or in part, (3) render an initial decision approving the Claim, (4) suggest a reasonable compromise or (5) indicate that it is unable to render an initial decision because the Owner lacks sufficient information to evaluate the merits of the Claim.
>
> . . .
>
> **§ 14.2.4** If the Owner requests the Design-Builder to provide a response to a Claim or to furnish additional supporting data, the Design-Builder shall respond, within ten (10) days after receipt of such request, and shall either (1) provide a response on the requested supporting data, (2) advise the Owner when the response or supporting data will be furnished or (3) advise the Owner that no supporting data can or will be furnished. Upon receipt of the response or supporting data, if any, the Owner will either reject or approve the Claim in whole or in part.
>
> **§ 14.2.5** The Owner's initial decision shall (1) be in writing; (2) state the detailed reasons therefor; and (3) identify any change in the Contract Sum or Contract Time or both. The initial decision shall be final and binding on the parties but subject to mediation and, if the parties fail to resolve their dispute through mediation, to binding dispute resolution.
>
> **§ 14.2.6** Either party may file for mediation of an initial decision at any time, subject to the terms of Section 14.2.6.1.
>
> **§ 14.2.6.1** Either party may, within thirty (30) days from the date of an initial decision, demand in writing that the other party file for mediation within sixty (60) days of the initial decision. If such a demand is made and the party receiving the demand fails to file for mediation within the time required, then the failing party waives its rights to mediate or pursue binding dispute resolution proceedings with respect to the initial decision and the requesting party may pursue remedies through other dispute resolution methods.
>
> . . .
>
> **§ 14.3.1** Claims, disputes, or other matters in controversy arising out of or related to the Contract, except those waived as provided for in Sections 9.10.4, 9.10.5, and 14.1.7, shall be subject to mediation as a condition precedent to binding dispute resolution.
>
> **§ 14.3.2** The parties shall endeavor to resolve their Claims by mediation which, unless the parties mutually agree otherwise, shall be administered by the American Arbitration Association in accordance with its Construction Industry Mediation Procedures in effect on the date of the Agreement. . . .

*Id.* at 42–44. "If the parties have selected arbitration as the method for binding dispute resolution in Section 1.3" (and they have here), "any claim subject to, but not resolved by, mediation shall be

subject to arbitration which . .. shall be administered by the American Arbitration Association." *Id.* at 45, § 14.4.1.

The Contract is covered by Ohio law ("the state where the Project is located") and "the Federal Arbitration Act govern[s]" the arbitration clause under the Contract. *Id.* at 45, §§ 15.1, 14.4. Finally, § 15.4.2 provides that "[n]o action or failure to act by the Owner or Design-Builder shall constitute a waiver of a right or duty afforded them under the Contract, nor shall such action or failure to act constitute approval of or acquiescence in a breach thereunder, except as may be specifically agreed in writing." *Id.* at 47.

<u>The Parties Conduct</u>

***May 19 Letter – Chemtrade Holdco to Plaintiff***

On May 19, 2025, Chemtrade Holdco sent Plaintiff a letter. (Doc. 7-1). Therein, Chemtrade Holdco stated it was writing to "notify [Plaintiff] of its intention to withhold US $1,450,000 from payment of [Plaintiff's] final invoice(s) for the services performed by [Plaintiff]." *Id.* at 1. Chemtrade Holdco asserted "such amount is necessary to satisfy certain claims" that certain contractual work was not completed in accordance with the contract and then listed its disputes. *Id.* The letter concluded with a request "to arrange a telephone conversation to discuss this matter further after your review of this Letter to expedient a mutually acceptable resolution." *Id.* at 2.

***June 11 Letter – Plaintiff to Chemtrade Holdco***

On June 11, Plaintiff responded to Chemtrade Holdco's May 19 letter, stating that it "consider[ed] Chemtrade Holdco's letter to be the initiation of a claim under [§] 14.2.2.1 and this letter serves as [Plaintiff's] formal response to the same as required under that section." (Doc. 7-1, at 1). It "categorically dispute[d] the claims set forth in Chemtrade's letter." (Doc. 7-1, at 1). It then provided specific responses to the asserted disputes, asserting the claims were both

procedurally and substantively deficient. *See id.* at 1-4. It concluded that "Pursuant to Section 14.2.2.1 of the Agreement, [Plaintiff] unequivocally and categorially rejects Chemtrade's claim presented in its letter dated May 19, 2025." *Id.* at 3. Finally, Plaintiff's letter contained a demand for mediation: "Pursuant to Article 14.2.6.1 of the Agreement, [Plaintiff] hereby formally demands mediation to resolve this dispute." *Id.* at 4.

Chemtrade Holdco did not respond to this letter.

***July 17 Letter – Plaintiff to Chemtrade Holdco***

On July 17, 2025, Plaintiff sent Chemtrade Holdco a letter with the subject line "Notice of Breach of Contract" and asserted it was a "formal demand for $1,946,740.16, which remains due and owing" under the Contract. (Doc. 9-1, at 2). It cited its previous letter of June 11, and stated "Chemtrade has failed to comply with its contractual obligations, including":

1. Failure to issue an initial decision within 10 business days required under Article 14.2.2.1;
2. Failure to provide timely notice of claims as required by Article 14.1.3.1;
3. Failure to certify or justify withholding payment within seven days of receiving ITAC's payment applications;
4. Failure to remit undisputed amounts under the Agreement.

*Id.*

***July 22 Letter – Chemtrade Holdco to Plaintiff***

Chemtrade Holdco responded on July 22, 2025. (Doc. 6-5). The letter asserted Chemtrade was "diligently investigating the claims and disputes" and would "respond in good faith to [Plaintiff's] demands for payment and explain and detail the basis for Chemtrade's exercise of its rights." *Id.* at 2. It asserted it "disagrees with and denies the contentions in [Plaintiff's] letter and reserves all rights." *Id.*

Complaint

The Complaint (originally filed August 29, 2025) alleges Defendants (Chemtrade Holdco and Chemtrade Logistics) failed to satisfy their contractual obligations of remitting payment, and have failed to follow the Contract's required procedures to proceed with mediation or arbitration. (Doc. 1-2). Plaintiff brings claims for (1) a declaratory judgment stating the contractual dispute resolution process—mediation and/or arbitration—is unavailable in this case, (2) breach of contract, (3) unjust enrichment, (4) tortious interference with business relations, (5) tortious interference with contractual relations, and (6) indemnification. *See id.*

## STANDARD OF REVIEW

Motions to compel arbitration are treated like motions for summary judgment. *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002). Courts may consider both the pleadings and additional evidence submitted by the parties and view all facts and inferences in the light most favorable to the nonmoving party. *Id.* "The burden is on the party opposing arbitration to show that the agreement is not enforceable." *Townsend v. Stand Up Mgmt.*, 2019 WL 3729266, at *2 (N. D. Ohio) (citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91-92 (2000)). "In order to meet this burden, 'the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate, a showing that mirrors the summary judgment standard.'" *Id.* (quoting *Great Earth*, 288 F.3d at 889).

Under the Federal Arbitration Act ("FAA"), if a party to an arbitration agreement refuses to comply, the aggrieved party may petition the district court with jurisdiction over the underlying matter for an order to compel arbitration as provided in the agreement. 9 U.S.C. § 4. The procedure for determining whether to grant a motion to compel is as follows:

> first, [the court] must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are

> asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) (citation omitted). "[A]bitration is a matter of contract between the parties, and one cannot be required to submit to arbitration a dispute which it has not agreed to submit to arbitration." *United Steelworkers, Local No. 1617 v. Gen. Fireproofing Co.*, 464 F.2d 726, 729 (6th Cir. 1972). However, "any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration." *Stout*, 228 F.3d at 714 (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)); *see also AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) ("Where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.") (citation modified); *Huffman v. Hilltop Cos.*, 747 F.3d 391, 394-95 (6th Cir. 2014) (discussing "the strong federal policy" and "strong presumption in favor of arbitration"). Further, "[w]hen a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024).

## Discussion

Defendants contend all claims in Plaintiff's claims are subject to arbitration. (Doc. 6). They contend the Contract contains a valid arbitration agreement and all causes of action are "claims" that "aris[e] out of or relat[e] to the Contract." *Id.* at 11 (quoting Doc. 6-1, at § 14.1.1). Plaintiff's response is essentially three-fold: (1) the contractual conditions precedent to mediation or arbitration are not met; (2) Chemtrade Holdco waived any right to compel alternative dispute

resolution, and (3) Chemtrade Logistics is not a party to the contract and cannot enforce the arbitration provision. (Doc. 7). As discussed below, the Court finds the Contract's alternative dispute resolution requirement governs the claims Plaintiff asserts in this case and grants Defendants' Motion.

Agreement to Mediate/Arbitrate

It is undisputed that the parties' Contract provides for a dispute resolution procedure for "claims" that includes an initial decision, and then mediation first, followed by arbitration if certain conditions are met. Again, the Contract defines a "claim" as "a demand or assertion by one of the parties seeking, as a matter of right, payment of money, or other relief with respect to the terms of the Contract" and "other disputes and matters in question between the Owner and Design-Builder arising out of or relating to the contract." (Doc. 6-1, at 42, § 14.1.1).

As Defendants' argument goes, first, the central "Claim" at issue in the Complaint before this Court is Plaintiff's July 17 letter demanding payment. *See* Doc. 1-2, at 5 (Complaint contending Chemtrade "is withholding $1,946,740.16 which remains due and owing to [Plaintiff]" and "[o]n July 17, 2025, [Plaintiff] demanded immediate payment of $1,946,740.16 which remains due and owing to [Plaintiff].") (Doc. 1-2, at 5). Second, pursuant to the contract, Chemtrade Holdco "render[ed] an initial decision rejecting [that] Claim in whole." (Doc. 9, at 2) (quoting Doc. 6-1, at § 14.2.2.2); (Doc. 6-5, at 1) (Defendants' July 22 response letter "disagrees with and denies the contentions in [the July 17] letter and reserves all rights."). Thus, pursuant to the Contract, Defendants contend, that "initial decision" is "final and binding on the parties but subject to mediation, and, if the parties fail to resolve their dispute through mediation, to binding dispute resolution." (Doc. 6-1, at 44, § 14.2.5). Pursuant to the Contract, after an initial decision, either party "may, within thirty (30) days from the date of an initial decision, demand in writing that the

other party file for mediation within sixty (60) days of the initial decision." (Doc. 6-1, at 44, § 14.2.6.1). If one party does so, and the other party fails to file for mediation within the required time period "then the failing party waives its rights to mediate or pursue binding dispute resolution proceedings with respect to the initial decision and the requesting party may pursue remedies through other dispute resolution methods." *Id.*[3] Defendants contend Plaintiff did not issue such demand required by § 14.2.6.1 as to the July 17/22 exchange (and Plaintiff presents no evidence to the contrary). Finally, Defendants contend that there is no question that each of Plaintiff's causes of action "aris[e] out of or relat[e] to the contract" making them "claims" that are "subject to mediation as a condition precedent to binding dispute resolution." (Doc. 6-1, at § 14.3.1). Therefore, Defendants contend, the Parties are still within the terms of the Contract's dispute resolution procedures and must abide by them.

Plaintiff resists this conclusion, contending instead Chemtrade Holdco's May 19 letter is the operative "Claim" at issue in the Complaint and asserts Chemtrade Holdco's failure to timely render an "initial decision" on that Claim "waived any right to alternative dispute resolution contemplated by the contract" because it did not issue an initial decision as required. (Doc. 7, at 5-6). The letter certainly fits within the definition of "Claim" provided in the contract, and Plaintiff correctly cites Ohio caselaw regarding waiver. *See* Doc. 7, at 6. However, pursuant to the terms of the Contract, the procedure for a claim initiated by Chemtrade Holdco ("Owner") is (1) a written response from the Plaintiff ("Design-Builder") (2) an initial decision by the Owner. (Doc. 6-1, at 43-44, § 14.2.2.1). Even taking the May 19 letter as the operative "Claim", it does not appear any "initial decision" on such a claim was issued. Although Plaintiff attempts to frame this non-

3. The Contract otherwise provides that "[e]ither party may file for mediation of an initial decision at any time." (Doc. 6-1, at 44, § 14.2.6).

issuance of an initial decision as a waiver of the right to enforce mediation/arbitration, the contract itself expressly provides to the contrary. *See* Doc. 6-1, at 47, § 15.4.2 ("No action or failure to act by the Owner or Designer-Builder shall constitute a waiver of a right or duty afforded them under the Contract, nor shall such action or failure to act constitute approval of or acquiescence in a breach thereunder, except as may be specifically agreed in writing."); *cf.* Doc. 6-1, at 44, § 14.2.6.1 (explaining that if a mediation demand is made "and the party receiving the demand fails to file for mediation within the time required, then the failing party waives its rights to mediate or pursue binding dispute resolution proceedings with respect to the initial decision and the requesting party may pursue remedies through other dispute resolution methods."). The Contract requires such an initial decision as a "condition precedent to mediation of all Claims . . . unless 30 days have passed after the Claim has been initiated with no decision having been rendered." (Doc. 6-1, at 43, § 14.2.1). And mediation is "condition precedent to biding dispute resolution." *Id.* at 44, § 14.3.1.

Although the parties did not cite it, the Supreme Court has held that an arbitrator, rather than a court, must decide whether conditions precedent to arbitration have been met.[4] *Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 84 (2002) (holding that arbitrator must decide whether a party's demand to arbitrate was time-barred); *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557 (1964) (holding that an arbitrator should decide whether the first two steps of a grievance procedure were completed, where these steps are prerequisites to arbitration); *see also JPD, Inc. v. Chronimed Holdings, Inc.*, 539 F.3d 388, 392 (6th Cir. 2008) (holding that arbitrator should determine whether a party's failure to provide specific documentation was a condition precedent to arbitration); *Capitol Indem. Corp. v. Dayton Bd. of Educ.*, 492 F. Supp. 2d 829, 835 (S.D. Ohio

4. Defendants do argue in their initial motion that "even the preliminary question of whether the mediation/arbitration dispute resolution clause has been waived or become 'not available' is itself to be decided by binding arbitration." (Doc. 6, at 4).

2006) ("An arbitrator, rather than a court, however, must decide the antecedent procedural questions, such as whether conditions precedent to arbitration have been met."). Further, the presumption is that arbitrators should decide "allegation[s] of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

In the instant case, the Contract refers to an initial decision as a "condition precedent" to mediation and mediation as a "condition precedent" to arbitration. *See* Doc. 6-1, at 43-44, §§ 14.2.1, 14.3.1. And the parties' agreement asserts that (absent contrary agreement) any mediation will be "administered by the American Arbitration Association in accordance with its Construction Industry Mediation Procedures in effect on the date of the Agreement." (Doc. 6-1, at 44, § 14.3.2). As another court addressing a similar provision explained:

> Section 6.1.1 of the Master Agreement labels mediation as "a condition precedent." (Doc. 1-1 at PageID 18 ("Any claim arising out of or related to this Subcontract, except those waived in this Subcontract, shall be subject to **mediation as a condition precedent** to binding dispute resolution.") (emphasis added)). Whether it has been satisfied, then, is a subsidiary question reserved to the arbitrator. As the Sixth Circuit explains:
>
> > **Subsidiary questions** grow out of the dispute and bear on its final disposition; and they include, for example, issues related to waiver, delay or **whether a condition precedent to arbitrability has been fulfilled**. Once a court decides that the parties have agreed to resolve a particular dispute through arbitration, it follows almost *a fortiorari*—absent clear language to the contrary in the parties' agreement—that they would have agreed to have an arbitrator decide these subsidiary questions as well.
>
> *Reed Elsevier, Inc. v. Crockett*, 734 F.3d 594, 597 (6th Cir. 2013) (cleaned up) (emphasis added). Here the parties included a condition precedent (mediation) to arbitration; whether it occurred, therefore, is a question for the arbitrator and not the Court.
>
> But, even if a gateway question, the arbitrator still decides. Section 6.3.1 of the Master Agreement states that claims subject to arbitration shall be administered by the AAA "in accordance with its Construction Industry Arbitration Rules[.]" (Doc. 1-1 at PageID 18). And Rule 9 expressly confers to the arbitrator the "power" to decide questions of arbitrability. (Doc. 5-1 at PageID 119 ("The **arbitrator** shall

> have **the power to rule on** his or her own **jurisdiction**, including any objections with respect to **the existence, scope or validity** of the arbitration agreement.") (emphasis added)). By virtue of incorporating the AAA rules into their contract, then, the parties have clearly and unmistakably delegated the arbitrability question to the arbitrator. *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842 (6th Cir. 2020).[1] Thus, this Court lacks power to decide the arbitrability issue that Pinnacle frames: whether, by failing to mediate, Kelchner has waived its ability to pursue arbitration. *See Henry Schein*, 139 S. Ct. at 529.

*Pinnacle Design/Build Grp., Inc. v. Kelchner, Inc.*, 490 F. Supp. 3d 1257, 1263–64 (S.D. Ohio 2020).

The Court therefore finds that whether these "conditions precedent" to binding arbitration have been satisfied is a question not for the Court, but for the mediator/arbitrator.

Finally, the Court agrees with Defendants that the causes of action raised in Plaintiff's Complaint are covered by the Contract's alternative dispute resolution clause. Again, the Contract defines a "Claim" broadly as "a demand or assertion by one of the parties seeking, as a matter or right, payment of money or other relief with respect to the terms of the Contract" and "other disputes and matters in question between the Owner and Design-Builder *arising out of or relating to* the Contract." (Doc. 6-1, at 42, § 14.1.1). The Sixth Circuit has observed that similar "arising out of or relating to" language is "quite broad" and that the Court "tak[es] the arbitration agreements at their word, and hold that any dispute arising out of (or that must make reference to) the [Contract] . . is subject to arbitration." *Fazio v. Lehman Bros.*, 340 F.3d 386, 396 (6th Cir. 2003); *see also Accuride Corp. v. Forgitron, LLC*, 2007 WL 2381952, at *3 (N.D. Ohio) ("The Supreme Court has previously held that an arbitration clause using the phrase 'any controversy or claim arising out of or relating to this contract or the breach hereof' (almost identical to the one in this case) provides for extremely broad application.") (quoting S*outhland Corp. v. Keating*, 465 U.S. 1, 15 n. 7 (1984)).

Plaintiff's declaratory judgment cause of action specifically seeks declarations regarding rights under the Contract. Plaintiff's breach of contract and unjust enrichment claims are expressly based on the Contract and underlying project. Plaintiff's tortious interference (with business relations and contractual relations) claims are based on relationships with a subcontractor related to the Contract's project. Similarly, Plaintiff's indemnification claim is based on payments to a subcontractor related to that contract. Each of these claims is certainly "relate[d] to" the Contract. (Doc. 6-1, at 42, § 14.1.1).

Because "any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration." *Stout*, 228 F.3d at 714, it cannot "be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute," *AT & T Techs.*, 475 U.S. at 650, and all causes of action asserted in Plaintiff's Complaint are covered by the Contract's dispute resolution clause, compelling arbitration thereof is appropriate. The Court further finds, as above, that the question of whether conditions precedent to arbitrator and defenses thereto (e.g., waiver), are subsidiary questions for the arbitrator.

<u>Chemtrade Logistics</u>

This leaves the parties' final remaining dispute: the status of Chemtrade Logistics. Plaintiff contends "Chemtrade Logistics is not a party to the contract, and therefore, has not agreed to be bound by any arbitration." (Doc. 7, at 7). Plaintiff correctly cites caselaw holding that "arbitration is a matter of contract between the parties, and one cannot be required to submit to arbitration a dispute which it has not agreed to submit to arbitration." *Simon*, 398 F.3d at 775 (quotation omitted); *AT&T Techs*., 475 U.S. at 648.

The Court applies the relevant state's contract law to determine who may enforce an arbitration clause. *AtriCure, Inc. v. Meng*, 12 F.4th 516, 520 (6th Cir. 2021). Ohio law "generally

prevents nonparties from enforcing arbitration clauses unless they are intended third-party beneficiaries." *Id.* at 526 (citations omitted). But, "Ohio courts have recognized that a nonsignatory agent may enforce an arbitration agreement between a plaintiff and the agent's principal when ordinary principles of contract and agency law require." *Rivera v. Rent A Center, Inc.*, 2015 WL 5455882, at *4 (Ohio Ct. App). And a nonsignatory can compel arbitration with a signatory to an arbitration agreement "because of the close relationship between the entities involved, as well as the relationship of the alleged wrongs to the nonsignatory's obligations and duties in the contract" and if "the claims were intimately founded in and intertwined with the underlying contract obligations." *Belmont Med. Care, LLC v. Cmty. Ins. Co.*, 2019 WL 1676003, at *4 (S.D. Ohio) (quoting *Thomson-CSF v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995)); *see also see Javitch v. First Union Secs., Inc.*, 315 F.3d 619, 629 (6th Cir. 2003) (noting that non-signatories may be compelled to arbitrate under the doctrine of estoppel).

Chemtrade Logistics is a wholly-owned, indirect subsidiary of Chemtrade Holdco. (Doc. 6-6, at 1). Under the Contract, such "Owner Affiliates" could issue purchase orders. (Doc. 6-1, at 12, § 2.1.3.3); *see also* Doc. 6-6, at 3. The contract further provided that "If an Owner Affiliate issues a purchase order to Design-Builder, the terms and conditions set forth in this Agreement shall apply to and be binding upon such Owner Affiliate and the Design-Builder for each such purchase order." *Id.* Chemtrade Logistics did so here. *See* Doc. 6-6, at 3, 5-7. Indeed, by the allegations of Plaintiff's Complaint itself:

> The obligations of Chemtrade Holdco U.S., Inc. under the Contract were assigned to, assumed by, imputed to, accepted by, granted to, transferred to, acquiesced in, or otherwise undertaken by Chemtrade Logistics (U.S.), Inc.; or, in the alternative, a sufficient nexus existed to create privity of contract between ITAC and Chemtrade Logistics (U.S.), Inc.; and/or Chemtrade Logistics (U.S.), Inc. was a third-party beneficiary of the Contract.

(Doc. 1-2, at 7).

Given the Contract's express terms, and the fact that Plaintiff's claims against Chemtrade Logistics are "founded in and intertwined with the underlying contract obligations," *Belmont Med. Care*, 2019 WL 1676003, at *4, and the fact that it is Chemtrade Logistics (a nonsignatory) seeking to enforce the arbitration clause against Plaintiff (a signatory), the Court finds Chemtrade Logistics, along with Chemtrade Holdco, can enforce the Contract's dispute resolution procedure.[5]

## CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Defendants' Motion to Compel Arbitration (Doc. 6) be, and the same hereby is, GRANTED; and it is

FURTHER ORDERED that this case be, and the same hereby is, STAYED pending the conclusion of arbitration. 9 U.S.C. § 3; *Smith v. Spizzirri*, 601 U.S. 472, 476 (2024); and it is

FURTHER ORDERED that this case marked administratively CLOSED on the Court's docket subject to a Motion to Reopen filing by any party following the arbitration proceedings.

s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE

Dated: September 4, 2026

5. The Court further finds unpersuasive Plaintiff's argument that any confusion over the real property owner as identified by the Allen County Auditor requires any different result herein. The "Owner" for purposes of the Contract and its terms is clearly defined by the Contract itself as Chemtrade Holdco. *See* Doc. 6-1, at 2. Plaintiff points to nowhere in the Contract where the owner of the real property is relevant or material.